## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MELANIE MEJIA-DISLA,**

      *Plaintiff,*

        v.

**DEINDE FINANCIAL, LLC,
DEINDE GROUP, LLC, and
TRANSPORTATION ALLIANCE
BANK, INC.,**

      *Defendants.*

Case Number:


**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Melanie Mejia-Disla** ("**Ms. Mejia-Disla**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Deinde Financial, LLC** *doing business as* **Integra Credit** ("**Deinde**"), **Deinde Group, LLC** ("**Deinde Group**"), and **Transportation Alliance Bank, Inc.,** *doing business as* **TAB Bank** ("**TAB Bank**") (collectively, the **"Defendants"**), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action by Ms. Mejia-Disla against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, § 559.55,

Fla. Stat., *et seq.* ("**FCCPA**"), the Florida *Civil Remedies for Criminal Practices Act*,
§ 772.101, Fla. Stat., *et seq.* ("**CRCPA**"), and for unjust enrichment.

## JURISDICTION AND VENUE

2.  Subject matter jurisdiction for Plaintiff's RICO claims arises under 18
U.S.C. § 1965 and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant
transactions were committed within Orange County, Florida.

3.  This Court has supplemental jurisdiction over Plaintiff's CRCPA and
FCCPA claims under 28 U.S.C. § 1367.

4.  The Defendants are subject to the jurisdiction of this Court pursuant
to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C.
§ 1391(b)(2), because the acts complained of were committed and/ or caused by
the Defendants within the Middle District of Florida.

## PARTIES

### Ms. Mejia-Disla

6.  **Ms. Mejia-Disla** is a natural person residing in the City of Orlando,
Orange County, Florida.

7.  Ms. Mejia-Disla is a *Consumer* as defined by the FCCPA, § 559.55(8),
Fla. Stat.

**Deinde and Deinde Group**

8. **Deinde** and **Deinde Group** are both Delaware corporations with a principal business address of **120 S. Lasalle St, Suite 1600, Chicago, IL 60603.**

9. Deinde and Deinde Group are not registered to conduct business within the State of Florida.

10. The registered agent for Deinde and Deinde Group is **Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.**

**TAB Bank**

11. **TAB Bank** is a Utah corporation with a principal business address of **4185 Harrison Blvd., Suite 200, Ogden, UT 84403.**

12. TAB Bank's Florida registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

**FACTUAL ALLEGATIONS**

13. Around June 29, 2022, Ms. Mejia-Disla obtained a consumer installment loan from the Defendants, marketed as Integra Credit, in the amount of $1,700 (the "**Integra Credit Loan**" or "**Loan**"). **SEE PLAINTIFF'S EXHIBIT A.**

14. The interest rate on the Loan was **149.7463**% annually. *Id.*

15. Consumer installment loans or extensions of credit issued by Integra Credit are purportedly made by TAB Bank, a small state-chartered bank based in Ogden, Utah.

16.     However, as explained in more detail below, TAB Bank had virtually no involvement in the underwriting or approval of Ms. Mejia-Disla's Integra Credit Loan.

17.     Likewise, TAB Bank had no involvement in the billing, collection, or servicing of the Loan. TAB Bank did, however, knowingly participate in the scheme outlined below and profited from it.

18.     Pursuant to IntegraCredit.com, "Integra Credit is a brand name used by Deinde Group, LLC, [and] Deinde Financial, LLC."

19.     The money used to fund the extension of credit Deinde made to Ms. Mejia-Disla belonged to, overwhelmingly, Deinde, its subsidiaries, and its investors, and not to TAB Bank.

20.     Deinde was the entity that provided notices to Ms. Mejia-Disla, as required by law, such as Truth in Lending Act notices, loan agreements, and billing statements, and holds all documents pertaining to the Integra Credit Loan.

21.     Deinde, either directly or through its contractors, performs all, or virtually all, of the activities related to Integra Credit's lending business – including collection, servicing, payment and remittance operations.

22.     Ms. Mejia-Disla used the proceeds from the Integra Credit Loan to make personal and household purchases.

23.     The Integra Credit Loan thus meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat.

24.     § 687.02(1), Fla. Stat., renders loans made at interest rates greater than 18% per year *usurious*.

25.     § 687.071(2), Fla. Stat., renders loans made with annual interest rates in excess of 25% a criminal offense.

26.     § 687.071(3), Fla. Stat., renders loans made with annual interest rates **greater than 45%** a third-degree felony.

27.     § 687.071(7), Fla. Stat., renders any criminally usurious loan, and logically any debt stemming from such loan, void and unenforceable. *See also* § 516.02(2)(c), Fla. Stat. (rendering debts unenforceable that originated from usurious contracts).

28.     Long-standing public policy in Florida confirms the impossibility of the alleged debt. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

29.     Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Id.*

30.     Indeed, even the recovery of the principal balance made at usurious interest rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

31.     The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*,190 So.2d 415 (Fla. 2d DCA 1966).

32.     Because the Integra Credit Loan is subject to an annual interest rate of nearly 150%, which vastly exceeds the 45% limit as proscribed in § 678.071(3), Fla. Stat., the Loan is void *ab initio* and unenforceable in Florida, pursuant to § 687.071(7), Fla. Stat.

33.     The Integra Credit Loan is therefore an *Unlawful Debt* per § 772.102(2)(a)(3), Fla. Stat., and 18 U.S.C. § 1961(6).

### Deinde Engages in Rent-a-Bank Scheme with TAB Bank

34.     Formed in 2014, Deinde Group, LLC is a Chicago-based "FinTech" business which uses proprietary methods to make extensions of credit and loans to consumers at interest rates which are illegal in most states, including Florida.

35.     Deinde's CEO is Arthur Tretyak, and "is led by a team of seasoned consumer finance and risk analytics executives, with prior experience including TitleMax, a $400 million nonprime consumer lender, and Enova, a $800 million nonprime consumer lender." *See* VPC Specialty Lending Investments PLC, 2020 Annual Report.

36.     VPC Specialty Lending Investments PLC ("**VPC Specialty Lending**") is managed by Victory Park Capital Advisors, LLC ("**VPC Advisors**"), a Chicago-

based hedge fund which invests heavily in FinTechs who utilize "rent-a-bank" and "rent-a-tribe" lending models to make consumer loans at triple-digit interest rates.

37.     According to VPC Specialty Lending's 2020 Annual Report, Deinde was one of the firm's ten largest investments, and represented 3.76% of the firm's net asset value of £270,537,108, *i.e.*, it had invested £10,172,195 (approximately $12.6 million) in Deinde.

38.     Deinde claims Integra Credit loans are made by TAB Bank and that Deinde and its subsidiaries are simply the servicer of the loans for its "bank partner."

39.     However, as aforementioned, TAB Bank has virtually nothing to do with loans and lines of credit Deinde makes utilizing the Integra Credit name – other than to lend its name and status as a state-chartered bank to Deinde, a non-bank entity.

40.     Once the Integra Credit Loan was purportedly issued by TAB Bank to Ms. Mejia-Disla, the Loan was almost immediately sold by TAB Bank and assigned to Deinde.

41.     TAB Bank's sole function in the loan process is to make it *appear* that a Utah bank is the true creditor of Integra Credit Loans, even though by any objective standard, it is not.

42.     Such deals are frequently referred to as "rent-a-bank" schemes.

43.     Pursuant to the National Bank Act, TAB Bank is not subject to foreign state interest rate limits, and it has the ability to export the maximum interest rate in its home state of Utah to lend to borrowers in other states with stricter usury laws. *See* 12 U.S.C. § 85.

44.     Conveniently, Utah has no *per se* cap on interest rates, although its laws do prohibit unconscionable business practices, which can include usury.

45.     Thus, by TAB Bank claiming to be the "true lender" of Ms. Mejia-Disla's Loan, Deinde and TAB Bank assert the loans are exempt from Florida's criminal and civil statutes prohibiting usury.

46.     TAB Bank also "partners" with several other FinTechs to make consumer loans. TAB Bank offers no credit card products or other unsecured consumer loans directly, and its consumer lending business is overwhelmingly generated by its "partnerships" with entities like Deinde.

47.     In essence, Deinde launders its Integra Credit loans through TAB Bank, claiming that TAB Bank is the true lending entity, despite the fact that the loans are funded with a credit line controlled only by Deinde and its subsidiaries, underwritten and approved by Deinde, collected by Deinde, directly or via contractors, and interest in the loans is assigned to Deinde almost immediately after origination.

48.     Deinde Financial, LLC operates and beneficially owns more than a half-dozen other entities related to the funding and collection of Integra Credit

loans, including Integra Credit Fund Alpha, LLC, Integra Credit One, LLC, Integra Credit Two, LLC, Integra Credit Three, LLC, Integra Credit Four, LLC, Integra Credit Five, LLC, and Integra Credit Six, LLC.

49.     Deinde further indemnifies TAB Bank of any potential losses related to the Integra Credit loans. For all intents and purposes, no capital belonging to TAB Bank is actually at risk in the making of Integra Credit loans.

50.     Thus, TAB Bank was not the true lender of Ms. Mejia-Disla's Integra Credit Loan.

51.     Deinde is the true lender of Ms. Mejia-Disla's Loan, as it has the predominant economic interest in loans made to consumers like Ms. Mejia-Disla. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

52.     Beyond this, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

53.     TAB Bank stands to lose virtually nothing if a loan or extension of credit goes bad.

54.     Likewise, TAB Bank stands to profit very little in the event an extension of credit is paid in full at illegal annual interest rates, like the Integra Credit Loan issued to Ms. Mejia-Disla.

55.     Rather, TAB Bank collects a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with Deinde. TAB Bank is also paid a small amount of the profits from Integra Credit loans.

56.     Deinde maintains a cash collateral account with TAB Bank, an alternative collateral account, and letters of credit which benefit TAB Bank.

57.     This provides three extra layers of protection for TAB Bank, at the expense of Deinde, to ensure TAB Bank loses no money even if a loan the bank "made" does not perform.

58.     Consumers who are looking to obtain financing from Integra Credit must apply at www.IntegraCredit.com, not through TAB Bank's own website.

59.     Many courts have found that excessive rates of interest – even in the absence of any strict numerical limit – are nonetheless unconscionable business

practices. *See, e.g., State of New Mexico vs. B&B Investment Group d/b/a Cash Loans Now,* Docket 34,266, Supreme Court of New Mexico, June 26, 2014 (online payday lender's business practices were unconscionable and illegal under New Mexico law due to excessively-high interest rates, despite New Mexico having no strict limit concerning maximum interest rates).

60.     The average interest rate for a loan similar to the one made by Deinde (or, supposedly, TAB Bank), which was made by a legitimate lender to Ms. Mejia-Disla, based on her credit reports and scores at the time she applied for the loan in June 2022, would have been roughly **19% interest**. Deinde charged rates more than **seven times** this amount.

61.     The Integra Credit Loan was subject to interest rates so excessive that the vast majority of states – including Florida – could prosecute such actions as felonies under state law.

62.     The Defendants' claims that the Loan is made by a state-chartered, and thus government-vetted, lending institution also adds an air of legitimacy to the Integra Credit loans.

63.     Deinde and TAB Bank are aware that almost all consumers will believe that a state-chartered bank, insured by the FDIC, and subject to substantial regulatory scrutiny, will charge interest and fees only as allowed by law. The imprimatur of the FDIC's insurance of TAB Bank makes loan products like Integra

Credit seem more legitimate to a consumer than they otherwise would if the identical loan was marketed by Deinde, a foreign, non-bank entity.

64.     Ms. Mejia-Disla has made seven payments of $114.79 each, towards the null, void and unenforceable Loan, paying a total of at least $803.53. **SEE PLAINTIFF'S EXHIBIT B.**

65.     Deinde and Deinde Group have made, directly or through agents or subsidiaries, collection calls to Ms. Mejia-Disla, and sent her collection e-mails and text messages.

66.     Ms. Mejia-Disla has been damaged in that she made payments to the Defendants for an extension of credit which is void and unenforceable pursuant to Florida law.

67.     Ms. Mejia-Disla also suffered severe emotional distress as a result of the Defendants' attempts to collect the usurious Loan.

68.     Ms. Mejia-Disla has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO,
## 18 U.S.C § 1962(c)

69.     Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated herein.

70.     The Defendants, through their joint operation and control of Integra Credit, constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

71.     The Loan charged an interest rate far in excess of Florida's maximum permitted rate, and thus the balance of the Loan is an "unlawful debt" pursuant to 18 U.S.C. § 1961(6).

72.     The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

73.     The Defendants' participation in the enterprise violated **15 U.S.C. § 1962(c)** and caused Ms. Mejia-Disla to repay amounts on the unlawful Loan.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages;

b.     Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT II
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO,
## 18 U.S.C § 1962(d)

74.     Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated herein.

75.     The Defendants, through their joint operation and control of Integra Credit, constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

76.     The Loan charged an interest rate far in excess of Florida's maximum permitted rate, and thus the balance of the Loan is an "unlawful debt" pursuant to 18 U.S.C. § 1961(6).

77.     The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other entities, to issue and collect unlawful debts through Integra Credit.

78.     The Defendants were each aware of the goals of the enterprise and each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued a loan to Ms. Mejia-Disla; (b) initiated ACH deposits and withdrawals to and from Ms. Mejia-Disla's bank account; (c) attempted collection of the Loan through credit reporting, and emails and phone calls to Ms. Mejia-Disla; and/or, (d) claimed ownership of Integra Credit loans to provide a guise of issuance from a bank.

79.     The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through Integra Credit.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages;

b.     Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

80.     Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated herein.

81.     The Defendants violated **§ 559.72(9), Fla. Stat.,** when they asserted the existence of a legal right which does not exist, specifically by attempting to enforce Ms. Mejia-Disla's Loan, when they collected and attempted further collection of the Loan via ACH withdrawals, emails, and calls to Ms. Mejia-Disla.

82.     The Loan was illegitimate and unenforceable due to the application of an interest rate of nearly 150% annually on the principal amount of the Loan, in

violation of §§ 687.071 and 516.02(2)(c), Fla. Stat., and the Defendants knew, or should have known, the Loan was unenforceable in Florida.

83.    The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from such collection.

84.    The Defendants each knew of the illegal nature of Integra Credit loans, as the Defendants have gone to great lengths to attempt to avoid Florida law through use of a "rent-a-bank" scheme.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.    Statutory damages of $1,000.00, pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages, pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing the Defendants from attempting further collection from Ms. Mejia-Disla, pursuant to § 559.77(2), Fla. Stat.;

d.    Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

e.    Such other relief that this Court deems just and proper

**COUNT IV**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA,**
**§ 772.103(3), FLA. STAT.**

85.     Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated herein.

86.     The Defendants, through their joint operation and control of Integra Credit, constitute an "enterprise" as defined by § 772.102(3), Fla. Stat.

87.     The Loan charged an interest rate far in excess of Florida's maximum permitted rate and, thus, the balance of the Loan constitutes an "unlawful debt" under § 772.102(2), Fla. Stat.

88.     The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

89.     The Defendants' participation in the enterprise violated **§ 772.103(3), Fla. Stat.,** and caused Ms. Mejia-Disla to repay amounts on the unlawful Loan.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.     Threefold the amount of actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.      Any other relief this Court deems equitable and proper under the

circumstances.

## COUNT V
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

90.      Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated

herein.

91.      The Defendants, through their joint operation and control of Integra

Credit, constitute an "enterprise" as defined by § 772.102(3), Fla. Stat.

92.      The Loan charged an interest rate far in excess of Florida's maximum

permitted rate and, thus, the balance of the Loan constitutes an "unlawful debt"

under § 772.102(2), Fla. Stat.

93.      The Defendants violated **§ 772.103(4), Fla. Stat.** by conspiring with

each other, and other entities, to issue and collect unlawful debts through Integra

Credit.

94.      The Defendants were each aware of the goals of the enterprise and

each took actions in furtherance of this conspiracy. For example, at various times,

the Defendants have: (a) issued a loan to Ms. Mejia-Disla; (b) reported Ms. Mejia-

Disla's line of credit to the CRAs; (c) initiated ACH deposits and withdrawals to

and from Ms. Mejia-Disla's bank account; (d) attempted collection of the Loan

through calls to Ms. Mejia-Disla; and/or (e) claimed ownership of Integra Credit

loans to provide a guise of issuance from a bank.

95.     The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through Integra Credit.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severally, for:

a.      Threefold the amount of actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.      Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.      Any other relief this Court deems equitable and proper under the circumstances.

### COUNT VI
### UNJUST ENRICHMENT

96.     Ms. Mejia-Disla incorporates Paragraphs 1 – 68 as if fully restated herein.

97.     The Loan issued by Integra Credit to Ms. Mejia-Disla charged an interest rate which rendered it void and unenforceable in Florida.

98.     Plaintiff conferred a benefit on Defendants when she made payments totaling at least **$803.53** on the Loan, as she had no obligation to do so, and therefore, Defendants were owed nothing.

99.     Defendants knew, or should have known, of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful Loan such that it would be inequitable for Defendants to retain the money they received.

**WHEREFORE,** Ms. Mejia-Disla respectfully requests this Honorable Court enter judgment against Defendants, jointly and severely for:

a.      Actual damages for the payments pursuant to the void loan; and,

b.      Any other relief this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Ms. Mejia-Disla hereby demands a jury trial on all issues so triable.

Respectfully submitted this February 2, 2024, by:

**SERAPH LEGAL, P. A.**

_/s/ Brandon D. Morgan_
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-3434
Fax: 855-500-0705
_Counsel for Plaintiff_

**ATTACHED EXHIBIT LIST**

A Deinde's Truth in Lending Disclosure to Plaintiff, June 29, 2022 – Excerpt

B Ms. Mejia-Disla's Integra Account Showing Payment to Defendants – Excerpt